# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff/Respondent,**

**v.**                              **CIV 05-0391 JP/LAM**
                                         **CR 00-1462 LH**

**EVANGELIO ALVAREZ,**

        **Defendant/Movant.**

# SECOND
# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

      **THIS MATTER** is before the Court on Defendant/Movant Evangelio Alvarez' *Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* (hereinafter *"§ 2255 Motion"*) *(Doc. 4)*[2] filed on May 12, 2005.  Having held an evidentiary hearing on the remaining claim of ineffective assistance of counsel, and having considered the parties' submissions, relevant law and the record in this case and Case No. CR 00-1462, the undersigned recommends, for the reasons set forth below, that the single remaining ineffective assistance of counsel claim be **DISMISSED**, and that this case be **DISMISSED WITH PREJUDICE**.

## Factual and Procedural Background

---

[1] Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Proposed Findings and Recommended Disposition with the Clerk of the United States District Court for the District of New Mexico, 333 Lomas Boulevard, N.W., Albuquerque, New Mexico 87102.  **A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

[2] All references herein are to *USA v. Alvarez,* CIV 05-0391 JP/LAM unless otherwise indicated by reference to Mr. Alvarez' underlying criminal case, *USA v. Alvarez,* CR 00-1462 JH.

On August 9, 2001, Mr. Alvarez was charged by indictment with one count of conspiracy to possess with intent to distribute 50 grams and more of cocaine base, more commonly known as "crack" (Count I of the Second Superseding Indictment); and one count of possession with intent to distribute 5 grams and more of cocaine base, more commonly known as "crack" (Count IV of the Second Superseding Indictment).[3]  Mr. Alvarez' co-defendants pled guilty and Mr. Alvarez was the only defendant that went to trial where the jury reached a verdict.[4]  On September 26, 2001, the jury convicted Mr. Alvarez of Count I, conspiracy to possess with intent to distribute 50 grams and more of a mixture and substance containing cocaine base,  but was unable to reach a unanimous verdict on Count IV, distribution of 5 grams and more of a mixture and substance containing cocaine base.[5]  On October 8, 2002, Mr. Alvarez was sentenced to 151 months in prison.[6]

Mr. Alvarez appealed his conviction to the Tenth Circuit Court of Appeals and on September 25, 2003, the Tenth Circuit affirmed his conviction in an Order and Judgment.  *United States v. Alvarez*, No. 02-2326 (10th Cir. Sept. 25, 2003) (unpublished).  The mandate issued on October 17, 2003.[7]  Mr. Alvarez did not file a petition for a writ of certiorari with the United States Supreme Court, thereby triggering the one-year limitation on filing a § 2255 petition beginning on January 15, 2004.[8]  Thus, absent equitable tolling, Mr. Alvarez' § 2255 motion had to be filed by the

---

[3]*Second Superseding Indictment* (CR 00-1462, *Doc. 117*).

[4]*Respondent United States' Answer in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Doc. 9)* at 3-4.

[5]*USA v. Alvarez*, CR 00-1462 LH, *Verdict (Doc. 191)*.

[6]*Id.*, *Judgment in a Criminal Case (Doc. 284)*.

[7]*See United States v. Alvarez*, CR 00-1462, *Doc. 317*.

[8]The date the conviction became final, October 17, 2003, plus 90 days to file a petition for writ of certiorari (continued...)

one-year "anniversary date" of January 15, 2005.  On April 7, 2005, Mr. Alvarez filed a ***Motion for Leave to File an Overdue Habeas Petition Under 28 U.S.C. § 2255, Based on Counsel's Alleged Failure to Advise Defendant of Denial of His Direct Appeal Within the One Year Limitations Period; Declaration of Evangelio Alvarez in Support of Motion***.[9]  On April 18, 2005, the Court granted Mr. Alvarez an extension of thirty (30) days in which to file a § 2255 motion but noted that "typically, equitable tolling may be determined only after a § 2255 motion is filed."[10]  On May 12, 2005, Mr. Alvarez filed his ***§ 2255 Motion***.[11]  In the ***§ 2255 Motion***, Mr. Alvarez asserted three claims of ineffective assistance of counsel and a fourth claim alleged that the trial prosecutor had acted in violation of international treaties.[12]

On June 1, 2006, the undersigned Magistrate Judge filed ***Proposed Findings and Recommended Disposition*** (hereinafter ***"PF&RD"***) recommending that Mr. Alvarez' ***§ 2255 Motion*** be dismissed with prejudice because it was not filed within the one-year limitations period pursuant to 28 U.S.C. § 2255 and because his claims were procedurally barred and without merit.[13]  On June 19, 2006, Mr. Alvarez filed ***Objections to Proposed Findings and Recommended Disposition*** specifically addressing the timeliness of his ***§ 2255 Motion*** and one claim of ineffective assistance of

---

[8](...continued)
with the United States Supreme Court, equals January 15, 2004.

[9]*Doc. 1.*

[10]***Order (Doc. 3)*** at 1.

[11]*§ 2255 Motion (Doc. 4).*

[12]*Id.*

[13]***PF&RD (Doc. 11).***

counsel.[14]   After *de novo* review, Senior District Judge James A. Parker adopted in part the Magistrate Judge's recommendations in the **PF&RD** and ordered an attorney from the Criminal Justice Act Panel be appointed to represent Mr. Alvarez.[15]   Judge Parker adopted the Magistrate Judge's recommendations that Mr. Alvarez' claims were without merit as to the allegations that 1) Attorney Paul Rubino wrongfully advised Mr. Alvarez to sign stipulations and to withdraw a motion to set aside verdict; 2) Mr. Alvarez' trial attorney failed to recognize that his sentence exceeded the maximum authorized by jury findings; and 3) the federal prosecutor violated an international treaty.[16]

However, Judge Parker found that Mr. Alvarez' ***§ 2255 Motion*** was timely filed due to equitable tolling because Mr. Alvarez did not have notice of the Tenth Circuit decision affirming his conviction until January 27, 2005, despite his diligent pursuit of information regarding the disposition of this direct appeal.[17]   Judge Parker also found that the record contained conflicting evidence regarding Mr. Alvarez' ineffective assistance of counsel claim that his trial attorney, Francisco Mario Ortiz, had failed to convey a proposed plea offer prior to trial.[18]   To determine the credibility of competing affidavits sworn to by Mr. Ortiz and Mr. Alvarez and to answer the question of whether or not Mr. Ortiz informed Mr. Alvarez of the plea offer, Judge Parker ordered that an attorney from

---

[14]***Objections to Proposed Findings and Recommended Disposition*** (Doc. 12).

[15]***Order Adopting in Part the Proposed Findings and Recommended Disposition of the United States Magistrate Judge and Appointing Counsel From CJA Panel*** (Doc. 13).

[16]*Id.* at 9.

[17]*Id.* at 4-7.

[18]*Id.* at 8.

the CJA panel be appointed to represent Mr. Alvarez for this limited issue only.[19]   Judge Parker

ordered that Mr. Alvarez' newly appointed counsel and the responsible Assistant United States

Attorney confer in an effort to resolve the dispute informally, but if unsuccessful, counsel were to file

supplemental briefs on the merits of Mr. Alvarez' ineffective assistance of counsel claim and on

whether an evidentiary hearing was warranted.[20]   Judge Parker then ruled that, if the undersigned

Magistrate Judge decided that an evidentiary hearing was necessary, the Magistrate Judge would hold

an evidentiary hearing to determine the credibility of the conflicting statements presented by Mr. Ortiz

and Mr. Alvarez.[21]

On December 11, 2006, Attorney Leon Schydlower was appointed to represent Mr. Alvarez.[22]

On February 28, 2007, Mr. Schydlower filed a ***Brief in Support of Petitioner's §2255 Motion

Alleging Ineffective Assistance of Counsel for Failure to Convey and Explain a Proffered Plea

Agreement, and Request for Evidentiary Hearing*** (hereinafter ***"Brief in Support"***) *(Doc. 17)* stating

that Assistant United States Attorney Terri Abernathy "averred that the United States maintains its

position that there was no ineffective assistance of counsel, and that the affidavit attached to the

government's response from trial counsel was dispositive on this issue."[23]   The ***Brief in Support***

requested an evidentiary hearing due to "contradictory assertions about whether the plea offer was

---

[19]*Id.*

[20]*Id.* at 8-9.

[21]*Id.* at 9.

[22]*CJA 20 Appointment of and Authority to Pay Court Appointed Counsel (Doc. 14).*

[23]***Brief in Support*** *(Doc. 17)* at 2.  The Court notes that the ***Brief in Support*** was originally filed as Document 15 on February 15, 2007 and at the clerk's request this corrected version was re-filed as Document 17 on February 28, 2007. All references herein are to Document 17.

conveyed, the deficiencies in trial counsel's affidavit, and the need for a credibility determination by this Court."[24]

On February 28, 2007, Respondent United States filed **United States' Response to Petitioner's Brief in Support of Petitioner's 28 U.S.C. § 2255 Motion** (hereinafter **"Response"**) *(Doc. 18)* opposing the request for an evidentiary hearing and arguing that the record clearly established that Mr. Ortiz' performance was not deficient.[25] In the **Response,** Respondent also argues that Mr. Alvarez cannot prevail on an ineffective assistance of counsel claim because he has failed to establish prejudice, *i.e.*, but for counsel's deficient performance there was a "reasonable probability" that he would have pled guilty.[26]

After consultation with counsel during a telephonic status conference,[27] the undersigned Magistrate Judge set an evidentiary hearing for Thursday, April 12, 2007 at 2:30 p.m.[28] This order allowed counsel to subpoena witnesses and documents for the hearing and ordered that, at the time of the hearing, counsel should submit proposed findings of fact and conclusions of law and a brief outlining the remedies available in the event the petition was granted.[29] Counsel were also given until noon on Monday, April 16, 2007 in which to supplement their findings of fact and conclusions of law in light of the testimony given at the hearing.[30]

---

[24]*Id.* at 5.

[25]**Response (Doc. 18)** at 2-3.

[26]*Id.* at 3.

[27]*See **Clerk's Minutes** dated March 12, 2007 (Doc. 21).*

[28]**Order Setting Evidentiary Hearing** *(Doc. 22).*

[29]*Id.*

[30]*Id.*

On April 10, 2007, the United States filed *United States' Memorandum of Law Addressing Remedies in the Event Petitioner's 28 U.S.C. § 2255 Motion is Granted* (Doc. 23).  On April 12, 2007, the United States filed *Respondent United States' Proposed Findings of Fact and Conclusions of Law* (Doc. 28) stating that Mr. Alvarez' insistence on his innocence, his awareness that his co-defendants were offered plea agreements, the government's verbal extension of the plea offer up to within one week of trial, and Mr. Ortiz' affidavit affirming that Mr. Ortiz and a fellow attorney did offer the plea agreement to Mr. Alvarez support denial of the ineffective assistance of counsel claim.  On April 13, 2007, Mr. Alvarez' attorney re-filed his *Proposed Findings of Fact with Respect to Evidentiary Hearing on [§] 2255 Petition* (Doc. 30) stating that Mr. Ortiz never presented or explained the plea offer to Mr. Alvarez and, therefore, Mr. Alvarez went to trial, was convicted and given a sentence twenty years in excess of the potential sentence he would have received had he accepted the plea offer.  On April 20, 2007, Mr. Alvarez filed *Evangelio Alvarez's [sic] Supplemental Proposed Findings of Fact* (Doc. 35)[31] stating, *inter alia*, that 1) Mr. Alvarez swore under oath that Mr. Ortiz never discussed the plea offer with him; 2) Mr. Alvarez decided to go to trial because he did not know about the plea offer; 3)  Mr. Alvarez would have accepted the plea if he had known about it; 4) Defendant produced no evidence that Mr. Alvarez knew about or approved documents filed by Mr. Ortiz that referred to the plea offer; 5) Mr. Ortiz was unable to produce a transmittal letter indicating the plea offer was forwarded to Mr. Alvarez; 6) Mr. Ortiz could not identify dates on which he met with Mr. Alvarez to discuss the plea offer but assumed dates he would have met with Mr. Alvarez based on court settings; 7) the June 13, 2001 plea offer was very

---

[31]This submission was timely filed as the Court granted in part Mr. Alvarez' *Motion to Continue the Deadline by Which to Supplement Proposed Findings of Fact* (Doc. 31) and continued the deadline until noon on April 20, 2007.  *Order Granting in Part Defendant's Motion to Continue Deadline by Which to Supplement Findings of Fact (Doc. 31) Doc. 33.*

different from the June 27, 2001 plea offer and if Mr. Ortiz discussed a plea offer on June 26, 2001 as stated, it must have been the June 13, 2001 offer; and 8) Mr. Alvarez was denied effective assistance of counsel because the June 27, 2001 plea offer was never conveyed to him.

On April 12, 2007, the undersigned Magistrate Judge held an evidentiary hearing [32] to make a credibility determination and, thereby, resolve the factual dispute regarding whether or not Mr. Alvarez' trial counsel, Francisco Mario Ortiz, conveyed a plea offer from the government to Mr. Alvarez prior to trial. Witnesses at the hearing included Defendant/Movant Evangelio Alvarez, Attorney Francisco Mario Ortiz, Attorney Cesar Pierce-Varela, and Assistant United States Attorney Terri Abernathy.[33] The United States offered into evidence ten (10) documents as exhibits.[34] At the conclusion of the hearing, the undersigned Magistrate Judge stated that her findings would be incorporated into her proposed findings and recommended disposition  to Judge Parker.

### The Plea Offer At Issue

The plea offer in question included a cover letter and attached plea offer which was faxed to Mr. Ortiz on June 27, 2001 and, under the terms of this plea offer, the government offered to dismiss Count I, the conspiracy charge, in exchange for Mr. Alvarez' agreement to plead guilty to Count IV,

---

[32]The evidentiary hearing was held on April 12, 2007 at 2:30 p.m. and, during approximately the first three hours of the hearing, Court Reporter Vanessa Arrieta recorded the proceedings. Ms. Arrieta left the hearing at approximately 5:37 and the rest of the hearing (approximately 20 minutes) was recorded on the Court's FTR Gold recording system. Therefore, there are two separate transcripts of the hearing with separately numbered pages. The Arrieta transcription of the first three hours of the hearing will be cited as *Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007), and the FTR Gold transcript of the final twenty minutes will be cited as *Transcript of Evangelio Alvarez' Evidentiary Hearing (conclusion)* (April 12, 2007).

[33]*See Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007); *Clerk's Minutes* (*Doc. 32*).

[34]*See Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32]* (*Doc. 34*).

which was the distribution of crack cocaine charge.[35]  The Government also agreed to stipulate that

Mr. Alvarez would be held accountable for only 5.9 grams of cocaine base.[36]  During the evidentiary

hearing, it was revealed that there was an earlier June 13, 2001 plea offer that would have required

Mr. Alvarez to basically plead guilty to the indictment, which would have subjected him to a much

higher penalty than the June 27, 2001 plea offer.[37]

## Evidentiary Hearing Testimony

## Alvarez Testimony

At the evidentiary hearing, Mr. Alvarez testified that Mr. Ortiz "never" informed him of the

plea offer[38] and that if the plea offer had been conveyed he would have accepted it.[39]  Although

Mr. Alvarez maintained his innocence throughout his criminal case,[40] he stated that if he had "known

they were offering a good deal to me, I would have accepted and pled guilty."[41]  Mr. Alvarez stated

---

[35]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 39; *Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 1.  See also, USA v. Alvarez,* CR 00-1462 LH, *Sentencing Memorandum and Objections to Pre Sentence Report* (*Doc. 248*), *Exhibit D.*

[36]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 39; *Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 1.*

[37]*Transcript of Evangelio Alvarez' Evidentiary Hearing(conclusion)* (April 12, 2007) at 5.

[38]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 10, 12, 16, 28.

[39]*Id.* at 15, 16, 27, 28.

[40]*See Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07 [sic] [Doc #32] (Doc. 34), Exhibit 3, Transcript of Evangelio Alvarez' Sentencing Hearing* (October 8, 2002) at 23-24; *Affidavit of Evangelio Alverez* [sic], dated May 31, 2005, at 1-2, attached as an unnumbered exhibit to Mr. Alvarez' *Supplemental Memorandum in Support of Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody *Affidavit of Evangelio Alverez* [sic]* Evidentiary Hearing Requested (Doc. 5)* (stating that Mr. Alvarez was not present and did not take part in any transactions of illegal substances).

[41]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 27.

that he met with Mr. Ortiz at his office two or three times[42] for about an hour each time[43] and that Mr. Ortiz "would call me at my house often"[44] to discuss the case.  Mr. Alvarez admitted he met with Mr. Ortiz and another attorney, who represented co-defendant Juan Silva-Cardoza,[45] at Mr. Ortiz' office and that "[e]verybody was there, and it was mentioned that everybody was going to plead guilty to the charges, but nobody ever talked to me and said directly to me, *Mr. Alvarez, you're going to plead guilty to this situation here*."[46]  Mr. Alvarez testified that he learned of the existence of the plea offer from Attorney Paul Rubino, after he had been sentenced.[47]

During cross examination at the evidentiary hearing,  Mr. Alvarez admitted he was aware that his co-defendants had been offered a plea deal, knew that it was a "package" deal (all defendants had to plead guilty) and that he remembered the prosecutor discussed the plea deal with all the defendants and their attorneys.[48]  Assistant United States Attorney Kelly Burnham asked Mr. Alvarez about this meeting.

> Q.      I said do you remember a time when someone from the prosecutor's office sat down in court, in the courtroom at the table with you and your attorney and the other defendants and their attorneys and talked about a plea?
>
> A.      Before court all of us got together, all of the attorneys and all the people involved in the case, and there was a deal that was discussed, but *it was for all the*

---

[42]*Id*. at 9, 16

[43]*Id*. at 22,23.

[44]*Id*. at 23.

[45]*Id.* at 25.  Mr. Alvarez could not remember this attorney's name but it was established later in the hearing that Cesar Pierce-Varela represented co-defendant Juan Silva-Cardoza and testified that he met with Mr. Alvarez and Mr. Ortiz.  ***Transcript of Evangelio Alvarez' Evidentiary Hearing*** (April 12, 2007) at 87-88.

[46]*Id.* at 25.

[47]*Id.* at 13, 14.

[48]*Id.* at 30-31.

*people involved*.  It was never discussed directly about a deal being offered [to] me.
It was *only for all the people involved in the case, for them to plead guilty*.

Q.      You included?

A.      Yes, I was there.[49]

During re-cross questioning, Ms. Burnham asked Mr. Alvarez if he had asked Mr. Ortiz about a plea

deal offered to him.[50]

Q.      So you knew that a plea offer had been made, yes?

A.      No. There was an offer made to everybody.  Not directly for me.

Q.      Okay.  All right.  It was made to everybody and you knew about it?

A.      Of course I knew about that.  I'm telling the truth.

Q.      And you never asked Mr. Ortiz about the particulars of it?

A.      The details about that or the offer?

Q.      The details about the offer.

A.      Well, I couldn't ask because I couldn't ask the jury - - well, or I mean, my
attorney because, if one person accepted the offer, well, it was an offer made to
everybody in general, to all of us in general.  So how could I ask my attorney, Mario
Ortiz, because what was explained by you-all, the prosecutors, was that the offer was
for one - - for everybody, not just for one of us.  And that's what the Government
prosecutor had offered.[51]

During the trial of the underlying criminal case (CR 00-1462), co-defendant Juan Silva-

Cardoza testified that Mr. Ortiz had asked Silva-Cardoza to try and convince Mr. Alvarez to plead

---

[49]*Id.* at 30 (emphasis added).

[50]*Id.* at 33-34.

[51]*Id.*

-11-

guilty.[52]  When asked during the evidentiary hearing if he remembered and understood Mr. Silva-Cardoza's trial testimony, Mr. Alvarez stated that the testimony might have happened "but Juan Silva-Cardoza never spoke to me or talked to me to try to convince me to plead guilty.  That never happened."[53]   When the Magistrate Judge asked Mr. Alvarez to clarify whether he understood Mr. Silva-Cardoza's trial testimony, Mr. Alvarez stated that although both he and Mr. Silva-Cardoza are Cuban and both speak Spanish, Mr. Alvarez "didn't understand because the Spanish he [Silva-Cardoza] was using in court [during the trial] was the Spanish that we don't use." [54]  Yet, during the underlying criminal trial, Mr. Silva-Cardoza testified that he met Evangelio Alvarez at a camp at Guantanamo Naval Base and that after moving to Albuquerque, Mr. Silva-Cardoza lived with Mr. Alvarez, saw Mr. Alvarez every day and sold drugs in concert with Mr. Alvarez.[55]  He further testified that, later, both men moved to Carlsbad and the relationship continued.[56]

### Abernathy Testimony

During the evidentiary hearing, Assistant United States Attorney Terri Abernathy stated that she was one of the trial attorneys that helped prosecute Mr. Alvarez' underlying criminal case (CR 00-1462).[57]  Ms. Abernathy explained the terms of the June 27, 2001 Alvarez plea offer sent to Mr. Ortiz and stated that the terms of the June 13, 2001 plea offer were, to the best of her

---

[52]*See **Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07** [sic] **[Doc #32]** (Doc. 34), Exhibit 2,* excerpt from ***Transcript of Evangelio Alvarez' Jury Trial***, September 25, 2001 in Case No. CR 00-1462, at 376-377.

[53]***Transcript of Evangelio Alvarez' Evidentiary Hearing*** (April 12, 2007) at 26-27.

[54]*Id.* at 36-37.

[55]***Transcript of Evangelio Alvarez' Jury Trial*** (September 25, 2001) at 348-353.

[56]*Id.* at 354-356.

[57]***Transcript of Evangelio Alvarez' Evidentiary Hearing*** (April 12, 2007) at 38.

knowledge, basically the same as the June 27, 2001 offer.[58]  Later in the hearing, after a copy of the

June 13, 2001 offer was discovered in a file belonging to Mr. Ortiz, Ms. Abernathy admitted that the

terms of the June 13, 2001 plea offer were substantially different from the June 27, 2001 plea offer

and the June 13th offer would have subjected Mr. Alvarez to a much higher penalty.[59]  Ms. Abernathy

testified that the June 27, 2001 plea offer was a joint plea offer, which meant that all of the defendants

had to plead guilty and that the deadline for accepting the offer was July 6th.[60]  However, the deadline

on the June 27, 2001 plea offer was extended verbally to all the defendants and the Government was

willing to allow Mr. Alvarez to plead guilty to the plea agreement up to a week before trial.[61]  This

testimony is corroborated by the fact that co-defendant Eduvijes Duran signed a plea agreement on

September 24, 2001,[62] co-defendant Juan Silva-Cardoza pled guilty on September 24, 2001, during

a sealed proceeding,[63] and co-defendant Roberto Vega-Rey pled guilty on September 25, 2001,

during a sealed proceeding, after one day of trial.[64]

      Ms. Abernathy testified that during the plea negotiations and court proceedings leading up

to trial, she spoke often with Mr. Ortiz and that she "had the sense from Mr. Ortiz that he thought

that the offer was a reasonable one and that he was recommending that his client accept the plea

---

[58]*Id.* at 39, 47.

[59]***Transcript of Evangelio Alvarez' Evidentiary Hearing(conclusion)*** (April 12, 2007) at 4-5.

[60]***Transcript of Evangelio Alvarez' Evidentiary Hearing*** (April 12, 2007) at 39.

[61]*Id.* at 40-41.

[62]*USA v. Eduvijes Duran*, CR 00-1462, ***Plea Agreement (Doc. 175)***.

[63]*USA v. Silva-Cardoza*, CR 00-1462, ***Clerk's Minutes*** *(Minute Sheet for Taking a Plea) (Doc. 176)*

[64]*USA v.Vega-Rey*, CR 00-1462, ***Clerk's Minutes*** *(Minute Sheet for Taking a Plea) (Doc. 184)*

offer."[65]  Ms. Abernathy admitted that Mr. Ortiz never explicitly told her that the plea offer had been

conveyed to Mr. Alvarez.[66]  Ms. Abernathy also testified that Mr. Alvarez "maintained his innocence

throughout these proceedings," that she was present at Mr. Alvarez' sentencing hearing on

October 8, 2002 and that during the hearing, Mr. Alvarez stated that he was innocent although he had

been convicted by a jury, which led her to believe that he would not have taken a plea offer.[67]

### Ortiz Testimony

Mr. Ortiz testified that he met many times with Mr. Alvarez prior to trial, including at

Mr. Ortiz' office, at court and "at his [Alvarez'] house in Carlsbad many times."[68]  Mr. Ortiz stated

that it was his practice to always convey plea offers, that he had never failed to convey a plea offer,

and that he had conveyed the plea offer to Mr. Alvarez.[69]  Mr. Ortiz explained what he did when he

received the plea offer in this case.

> A.      I reviewed it.  I checked the Guidelines.  I then - - thereafter I met with him,
> explained it to him and, all the while, he didn't want to - - he wanted to go to trial.
>
> Q.      Why did he want to go to trial?
>
> A.      He believed he was innocent.
>
> Q.      And when you explained the plea offer to him, did you explain that the A-level
> conspiracy count carried a mandatory minimum of 120 months?
>
> A.      Well, yeah, I explained all the minimum mandatories.  I explained to him that,
> without that, he would for sure do at least ten years because of the mandatory
> minimum.

---

[65]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 41.

[66]*Id.* at 51.

[67]*Id.* at 43.

[68]*Id.* at 57.

[69]*Id.* at 60.

Q.      And did you explain to him that by taking the Government's offer, he would be saving himself at least five years?

A.      Yes.  Well, more [than five years] I thought.[70]

Mr. Ortiz explained handwritten sentencing calculations he had written in the upper right-hand corner of his copy of the June 27, 2001 cover letter that accompanied the enclosed plea agreement while advising Mr. Alvarez of the consequences of accepting the plea offer.[71]  Mr. Ortiz also explained that the plea offer was an "all-or-nothing" deal and the other defendants wanted to plead so "we were getting the pressure from the others to plead, so it was constantly a subject brought up."[72]

Mr. Ortiz testified that on June 26, 2001, Attorney Cesar Pierce-Varela (counsel for co-defendant Silva-Cardoza) called and wanted to discuss the 'new' plea,[73] and although unclear as to the exact date of the meeting,[74] Mr. Ortiz assumed he had invited Mr. Pierce-Varela to meet with him and Mr. Alvarez on that same day as Mr. Alvarez was scheduled for an appointment.[75]  Mr. Ortiz testified that "Cesar came to my office.  All three of us sat down. . . . And Cesar sat down with us and he explained the plea to him [Mr. Alvarez] again.  And he told him, in his opinion, he should take the plea and what would happen if he didn't.  He explained to him how bad the case was."[76]  But

---

[70]*Id.* at 58-59.

[71]*Id.* at 70-71; *See Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 8.*

[72]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 59.  *See also, id.* at 62,68.

[73]*Id.* at 68; *see Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 7* (phone message slip memorializing a call from Cesar Pierce dated 6/26).

[74]*Transcript of Evangelio Alvarez' Evidentiary Hearing(conclusion)* (April 12, 2007) at 9.

[75]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 68.

[76]*Id.*

Mr. Alvarez still refused to plead.[77]  Mr. Ortiz testified that, after discussing the offer with Mr. Alvarez, he attempted to get a better plea offer and, therefore, he faxed a request to Assistant United States Attorney Michelle Wykoff on June 28, 2001, "asking her to sweeten the pot a little bit."[78]  This fax states that "the plea looks good, however my client would request you include 3 levels for minimal/minor, as this was his only involvement."[79]

When it became evident during the evidentiary hearing that there had been two plea offers with different terms on June 13, 2001 and June 27, 2001, Mr. Ortiz acknowledged there were two plea offers but that he had no doubt that the offer he and Mr. Pierce-Varela discussed with Mr. Alvarez was the plea offer of June 27, 2001.[80]  In explaining how he and Mr. Pierce-Varela were able to convey the June 27, 2001 plea offer to Mr. Alvarez on June 26, 2001, Mr. Ortiz explained that plea agreements are offered verbally, then put into writing and either faxed or mailed.[81]  Mr. Ortiz was sure that the June 27, 2001 plea offer was the one he conveyed to Mr. Alvarez and that it was the one discussed by Mr. Pierce-Varela with Mr. Alvarez, and Mr. Ortiz testified that "when Cesar [Pierce-Varela] came, it was the three year offer. . . . he would not have been talking about any ten year offer, it was a three year offer.  Clearly, it was that - me and Cesar and the client discussed, because that was a good offer, that was the one he should take."[82]

---

[77]*Id.* at 69.

[78]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 66-67; *see Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 6.*

[79]*See Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 6.*

[80]*Transcript of Evangelio Alvarez' Evidentiary Hearing(conclusion)* (April 12, 2007) at 6-8.

[81]*Id.* at 6-7.

[82]*Id.* at 8.

In answer to a question, Mr. Ortiz testified that he had a personal recollection about meeting with Mr. Alvarez regarding the June 27, 2001 offer and that it was "for sure . . . absolutely . . . when I sat down with Cesar, but other than that, I discussed it with him maybe three other times."[83] Mr. Ortiz admitted that he did not have a letter transmitting the plea offer to Mr. Alvarez,[84] and that at some point when it became clear Mr. Alvarez was not going to take the plea, he stopped discussing the plea offer.[85]

### Pierce-Varela Testimony

Mr. Pierce-Varela testified that he represented Mr. Silva-Cardoza in the criminal case involving Mr. Alvarez and that he had spoken to Mr. Alvarez regarding the Government's joint plea offer at the request of Mr. Ortiz.[86]  Mr. Pierce-Varela stated that he explained to Mr. Alvarez the specific offer the government had made.[87]  Ms. Burnham asked how Mr. Alvarez responded to the offer.

A.      Mr. Alvarez responded that i[t] didn't matter what plea offer would have been made. If I remember correctly, he said that the bones stated that he would not be convicted.

Q.      Do you know anything about Mr. Alvarez' background from having been involved in the case that would explain that statement?

A.      Yes. There were a lot of discussions of Santaria being involved in this particular case.  A mixture of Catholicism and witchcraft and those sorts of things. Not only did that come out from the discovery, but also from discussions with my own client. . . . Nevertheless, I had information that they looked to Mr. Alvarez as the

---

[83]***Transcript of Evangelio Alvarez' Evidentiary Hearing*** (April 12, 2007) at 76- 77.

[84]*Id*. at 75.

[85]*Id*. at 76, 80

[86]*Id.* at 87-88.

[87]*Id.* at 88.

person that could give them that sort of information that related to Santaria; in other words, what would happen based on certain signs, for example.

Q.      And Mr. Alvarez indicated to you that the signs were that he should not plead to anything?

A.      Yes.[88]

In response to questions from the Magistrate Judge, Mr. Pierce-Varela testified that when he explained the plea offer to Mr. Alvarez, Mr. Pierce-Varela spoke in Spanish and that it was clear that Mr. Alvarez understood that he had received a plea offer, which was the point of Mr. Pierce-Varela's meeting with Mr. Alvarez.[89]

## Discussion

After carefully observing witness demeanor, and reviewing witness testimony and documentary evidence presented during the evidentiary hearing, the undersigned Magistrate Judge finds that Mr. Alvarez' allegation that his trial attorney, Francisco Mario Ortiz, failed to convey a proffered plea offer is not credible.  The Court also finds Mr. Alvarez' testimony that he "never" knew about the June 27, 2001 plea offer,[90] that prior to trial, Mr. Ortiz "never" discussed with him a plea offer from the prosecutor in which he would only plead guilty to the distribution count and the conspiracy count would be dropped,[91] and that, prior to trial, he "never" discussed with Mr. Ortiz an offer from the prosecutor that his exposure with respect to a quantity of crack cocaine would be limited to 5.9 grams,[92] is not credible.  Evidence supporting this credibility finding include the fact that

---

[88]*Id*. at 88-89.

[89]*Id.* at 92.

[90]*Id.* at 10.

[91]*Id.* at 12.

[92]*Id.*

Mr. Ortiz faxed a request to United States Assistant Attorney Wykoff requesting an additional 3-level reduction on the basis of minimal/minor participation[93] and Mr. Ortiz' hand-written notations in the corner of the plea offer cover letter which shows that these calculations were the exact reductions listed in the June 27, 2001 plea offer[94] plus the requested 2-level reduction for minimal/minor participation. Both of these documents are consistent with a discussion of the plea offer by Mr. Ortiz with Mr. Alvarez. If Mr. Ortiz had never discussed the plea offer with Mr. Alvarez, there would have been no need to fax Assistant United States Attorney Wykoff requesting further reductions, nor would there have been a reason to place the notations on the cover letter accompanying the plea offer at issue here.

Furthermore, this Court finds that it is not credible that, although Mr. Alvarez admitted that he was aware of a joint plea offer to all defendants in the criminal case,[95] admitted that he was at a meeting of all defendants where the trial prosecutor explained the joint plea offer,[96] and admitted that he met with Mr. Ortiz and another attorney (Mr. Pierce-Varela) to discuss the case,[97] that Mr. Alvarez never questioned his attorney concerning the plea offer or how the plea offer would affect

---

[93]*See Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 6*.

[94]*See Exhibits to Clerk's Minutes of Evidentiary Hearing Held on 4/16/07* [sic] *[Doc #32] (Doc. 34), Exhibit 8*. The June 27, 2001, plea offer provided for "a reduction of three (3) levels from the base offense level" for "acceptance of personal responsibility for [Mr. Alvarez'] criminal conduct," and, if Mr. Alvarez qualified for 'safety valve reduction,' "a reduction of two levels" if he met "all of the criteria set forth in U.S.S.G. § 5 C 1.2 and 18 U.S.C. § 3553 (f)." *See USA v. Alvarez,* CR 00-1462 LH, *Sentencing Memorandum and Objections to Pre Sentence Report* (*Doc. 248*), *Exhibit D* at 4. The additional request by Mr. Ortiz in his fax to AUSA Wykoff represents a reduction for Mr. Alvarez being either a minor (2 level reduction) or minimal (4 level reduction) participant or in-between these two (3 level reduction). *See* U.S.S.G. § 3B1.2.

[95]*Transcript of Evangelio Alvarez' Evidentiary Hearing* (April 12, 2007) at 33.

[96]*Id*. at 30.

[97]*Id*. at 25.

him personally.[98]  From the testimony and evidence presented, the Court finds that it is more credible that Mr. Alvarez believed he was innocent, as he repeatedly asserted throughout his criminal proceedings, and believed that he had a sign from the 'bones' that he would not be convicted and, therefore, he made an informed choice to proceed to trial and now regrets that choice.

The undersigned Magistrate Judge also finds Mr. Ortiz' testimony to be credible, as his testimony is supported by corroborating testimony and documentary evidence that he did convey and explain the consequences of the plea offer.  Although Mr. Ortiz' testimony was vague as to dates and he lacked written confirmation that he had conveyed the plea offer to Mr. Alvarez, there is sufficient corroborating testimony provided by Mr. Pierce-Varela and Ms. Abernathy to support Mr. Ortiz' testimony, *i.e.*, Mr. Pierce-Varela met with Mr. Alvarez, explained the plea offer and advised Mr. Alvarez to accept the offer; and  Ms. Abernathy testified that the deadline on the plea offer was verbally extended beyond the original deadline and that the joint plea offer was discussed by prosecutors with all the defendants.  Also,  contemporaneous documentation, *i.e.*, the handwritten calculations on the plea offer cover letter, and the fax on June 28, 2001, to Assistant United States Attorney Wykoff attempting to negotiate a better deal, both of which support Mr. Ortiz' assertion that he did convey the plea offer of June 27, 2001 to Mr. Alvarez prior to trial.  Mr. Pierce-Varela was also uncertain of the exact date he had discussed the plea offer with Mr. Alvarez, which is not surprising after almost six years, but was certain that he had discussed the specifics of the plea offer with Mr. Alvarez in Spanish and was certain that Mr. Alvarez understood the plea offer; nevertheless, he opined that Mr. Alvarez was determined to proceed to trial.  Mr. Ortiz also questioned co-defendant Silva-Cardoza during the criminal trial regarding the plea offer although, at the evidentiary

---

[98]*Id.* at 33-34.

hearing,  Mr. Alvarez claimed to not have understood the portion of the testimony concerning a plea offer, which is not credible considering that Mr. Silva-Cardoza testified under oath at Mr. Alvarez' trial that Mr. Alvarez lived with and sold drugs in concert with Mr. Silva-Cardoza for many years.

The testimony and supporting evidence presented at the evidentiary hearing having convinced the Magistrate Judge that Mr. Ortiz did convey and explain the terms of the June 27, 2001 plea offer to Mr. Alvarez prior to trial, the undersigned Magistrate Judge finds that Mr. Ortiz' performance as his attorney was not deficient and that Mr. Alvarez' allegation of ineffective assistance of counsel is without merit.

### Conclusion

The undersigned Magistrate Judge recommends that the single remaining claim of ineffective assistance of counsel claim in Defendant/Movant Evangelio Alvarez' *Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* (Doc. 4) be **DISMISSED** and this case **DISMISSED WITH PREJUDICE**.

*Lourdes A. Martínez*
_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**